IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ASO NEJAD, #442036,               )
                                  )
        Petitioner,               )
                                  )
v.                                )        Case No. 3:14-cv-02029
                                  )
JAMES M. HOLLOWAY, Warden,        )        Judge Trauger
                                  )
        Respondent.               )

<u>MEMORANDUM OPINION</u>

Before the court is petitioner Aso Nejad's *pro se* petition under 28 U.S.C. § 2254 for the writ of habeas corpus, challenging his 2008 conviction in the Criminal Court for Davidson County, Tennessee. (ECF No. 1.) At the time the petition was filed, the petitioner was in the custody of the Tennessee Department of Correction and housed at the West Tennessee State Penitentiary in Henning, Tennessee. The respondent has filed an answer in opposition to the petition (ECF No. 34), along with a copy of the underlying state-court record (ECF No. 33). The petition is ripe for review, and this court has jurisdiction. 28 U.S.C. § 2241(d).

Upon consideration of the above-referenced filings, the court finds for the reasons set forth herein that the petitioner is not entitled to relief on the grounds asserted. The petition will therefore be denied and this matter dismissed.

I.      PROCEDURAL BACKGROUND

On July 16, 2008, the petitioner was found guilty by a Davidson County jury of conspiracy to commit first-degree murder. He was sentenced on September 2, 2008 to 25 years' incarceration as a standard offender with a 30% release eligibility. (Judgment and Amended Judgment, ECF No. 33-1, at 40, 41.) The conviction and sentence were affirmed on direct appeal. *State v. Aso Hassan Nejad a.k.a. Diako Nejad and Ako Hassan Nejad* ("*Nejad I*"), No. M2009-00481-CCA-R3-CD, 2010 WL 3562015 (Tenn. Ct. Crim. App. Sept. 14, 2010), *perm. app. denied* (Tenn. Feb. 17, 2011). On January 31, 2012, the petitioner filed a *pro se* petition for post-conviction relief in the state trial court. (ECF No. 33-13, at 9–47.) The trial court appointed counsel, who elected not to file an amended petition. After conducting a hearing at which the petitioner, his trial attorney, and two witnesses testified, the trial court entered an

order denying the petition. (ECF No. 33-13, at 55–73.) That decision was affirmed as well. *Nejad v. State* ("*Nejad II*"), No. M2013-00165-CCA-R3-PC, 2014 WL 1514592 (Tenn. Ct. Crim. App. April 17, 2014), *perm. app. denied* (Tenn. Sept. 25, 2014).[1]

Mr. Nejad filed his § 2254 petition in this court on October 21, 2014. The respondent concedes that the petition is timely.

## II.  STATEMENT OF FACTS

### A.  Trial

The Tennessee Court of Criminal Appeals summarized the testimony presented during trial as follows:[2]

> On August 4, 2006, the defendants [petitioner Aso Hassan Nejad and his brother, Ako Hassan Nejad] and several other individuals gathered at Paragon Mills Park for the purpose of retaliating against two individuals, Darion Coleman and an individual known only as "Germaine," who had robbed defendant Aso Nejad ("Aso") of $1500, during a drug deal. Members of the group, which included the defendants, Bushra Salih, Nechirvan Yahya, and a few others, made phone calls to the intended victims, setting them up to be ambushed under the guise of arranging a further drug deal. After making the necessary arrangements, the group went to a parking lot at Edwin Warner Park, the location of the attempted ambush. Defendant Ako then instructed the group that when the intended victims arrived, he was going to "take out" the driver, Salih was to "take out" the front passenger, and Defendant Aso and Yahya were to "take out" anyone else, whether they were in the back seat or in a separate vehicle. Each of those four conspirators armed themselves. Salih waited, alone, in a car for the intended victims while the other three conspirators waited behind some trees. Two other group members served as lookouts.

> The attempted ambush was foiled when a Metro park ranger spotted Salih sitting in the car and pulled up to investigate. After inquiring what Salih was doing, alone, in the park and whether he had any contraband, the officer asked Salih to turn off his engine, and began to get out of his vehicle. Salih responded by attempting to flee in his vehicle. As the officer pursued him, gunshots started coming at him. Salih's car soon swerved off the road into a ditch, and Salih fled into a wooded area. When the officer exited his patrol car to pursue, he noticed multiple bullet holes in the vehicle, including one that was only a foot and a half from where his head had been located. The officer discontinued the pursuit. Several hours later, Salih was taken into custody by law enforcement.

> Tracing the license plate on the abandoned vehicle led police to Defendant Ako. Conducting interviews, following forensic leads, and searching various cell phone records

---

[1]  The order denying permission to appeal is not in the court's record and is not available online either. The parties, however, do not dispute that the Tennessee Supreme Court denied review on September 25, 2014.

[2]  The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

eventually led police to Defendant Aso and the remaining co-conspirators.

*Nejad I*, 2010 WL 3562015, at *1. The evidence at trial consisted of eyewitness testimony and forensic evidence, on the strength of which defendant Aso was convicted of conspiracy to commit first-degree murder. His brother Ako was convicted of conspiracy to commit first-degree murder and attempted second degree murder for shooting at the Metro park ranger during Salih's escape.

**B.**    **Post-Conviction Hearing**

The Tennessee Court of Criminal Appeals summarized the evidence presented at the post-conviction hearing as follows:

> At the evidentiary hearing, Petitioner testified that trial counsel was retained to represent him "two or three weeks" prior to trial and that he spoke to trial counsel "once or twice" before trial. Petitioner expressed concern that trial counsel did not have enough time to prepare for trial, and trial counsel told him that he would be ready and "not to worry about anything." Petitioner testified that he did not receive a copy of the State's discovery prior to trial. Petitioner testified that in discussing possible defenses, he told trial counsel that he and his co-defendants intended to rob the victims, not to kill them. He testified that trial counsel told him his best defense was that Petitioner "was never at the scene." Petitioner told trial counsel that he wanted to testify "to show the truth of what happened, that [he] got robbed and show that there was no conspiracy to kill anyone." Petitioner testified that trial counsel advised him not to testify. Petitioner acknowledged that he waived his right to testify at trial and did not assert his desire to testify to the trial court. He testified that it was his decision not to testify at trial, but that trial counsel "kind of influenced" his decision because trial counsel told Petitioner, "they was [sic] going to make [Petitioner] look bad."
>
> Petitioner testified that although one of the individuals involved "brought a bag with some guns in it," Petitioner did not carry or fire a weapon. Petitioner acknowledged that the police found weapons at the scene. Petitioner testified that he and his co-conspirators "hadn't got to, you know, everybody grab a weapon and be ready[,]" but their plan was to commit the robbery with guns.
>
> Petitioner testified that he asked trial counsel to call as witnesses at trial Nashwan Muhammed and Drau Kokoye. He testified that trial counsel never spoke to either witness because "[b]asically [trial counsel] was going to use the defense to say [Defendant wasn't] there. If those witnesses had testified, then they would testify that [Defendant] was there, which would have made [him] look bad."
>
> Nashwan Muhammed testified that Petitioner's brother asked him to help rob the group of men who had robbed Petitioner, but Mr. Muhammed did not want to get involved. Mr. Muhammed testified that Petitioner's brother did not mention killing the intended victims of the robbery. He testified that Petitioner's trial counsel never contacted him about testifying at Petitioner's trial. . . .
>
> Petitioner's trial counsel[3] testified that he was retained by Petitioner's family to represent Petitioner approximately two weeks prior to trial. He testified that he reviewed

---

[3] The petitioner's trial attorney was Dumaka Shabazz, who is now a federal public defender and, as such, appears regularly before this court.

the file of Petitioner's former attorney before meeting with Petitioner and that trial counsel believed he was prepared to represent Petitioner at trial. Trial counsel testified that he was concerned about Petitioner testifying because Petitioner's testimony that he "was willing without hesitation to commit a robbery with guns that could very and most likely end up in violence" would prejudice Petitioner in the minds of the jurors. Trial counsel testified that his theory of defense was to argue that "this was only a robbery," and that the State could not prove that Petitioner was present at the time of the offense. Trial counsel testified that he advised Petitioner it was "ultimately his choice" whether or not to testify but that trial counsel told Petitioner he "didn't think it was necessary [for Petitioner to testify] because it did come out through several [witnesses] that this was going to be a robbery."

Trial counsel testified that he reviewed discovery materials with Petitioner "[s]everal times before the trial" and that Petitioner already had discovery, and trial counsel was not provided any new discovery materials after he was retained to represent Petitioner. Trial counsel spoke to Petitioner about potential witnesses, including Mr. Muhammed and Mr. Yahya. Trial counsel testified that he could not call Mr. Yahya as a witness or approach him about testifying because Mr. Yahya was represented by an attorney and charged as a codefendant. Trial counsel did not call Mr. Muhammed to testify because "there was nothing that he could add to it."

*Nejad II*, 2014 WL 1514592, at *1–3 (footnote added). As previously stated, the post-conviction court denied relief, and the appellate court affirmed.

## III. ISSUES PRESENTED FOR REVIEW

The petitioner presents the following claims for relief:

(1) that the evidence was insufficient to sustain the conviction (ECF No. 1, at 3);

(2) that the trial court erred in sentencing the petitioner to the maximum sentence (*id.* at 4);

(3) that the court erred in not declaring a mistrial after a witness testified that the appellant was a gangmember (*id.*);

(4) that the indictment was insufficient because it did not allege an overt act in furtherance of the conspiracy to commit first-degree murder (*id.* at 5);

(5) that trial counsel was constitutionally ineffective for failing to request a change of venue due to pretrial publicity (*id.*);

(6) that trial counsel was ineffective during jury selection for failing to move to exclude certain jurors on the basis of bias (*id.* at 6);

(7) that trial counsel was ineffective for failing to deliver an effective opening statement presenting a "rational trial strategy," for abandoning his theory of events, and for failing to "present a set of events that coincided with petitioner's version of events" (*id.*);

(8) that trial counsel was ineffective for failing to make proper objections during trial (the petition

lists 70 instances of allegedly improper testimony to the introduction of which counsel purportedly should have, but failed to, object) (*id.* at 7–12);

(9) that trial counsel was ineffective for failing to investigate material witnesses and to present them at trial (*id.* at 12);

(10) that trial counsel was ineffective for failing to preserve and raise issues on appeal (the petition lists 13 instances when trial counsel failed to object to purportedly improper testimony or otherwise to preserve issues for appeal) (*id.* at 12–14);

(11) that trial counsel was ineffective for failing to adequately advise the petitioner concerning his right to testify at trial or to prepare him to testify at trial (*id.* at 14);

(12) that trial counsel was ineffective for failing to effectively cross-examine the state's witnesses (listing 10 instances of such failure) (*id.* at 14–15);

(13) that trial counsel was ineffective at the sentencing phase (*id.* at 15);

(14) that the petitioner was denied the effective assistance of counsel on appeal (*id.* at 16); and

(15) that the petitioner was denied the effective assistance of post-conviction appellate counsel (*id.*).[4]

## IV.    STANDARD OF REVIEW

The petition in this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal citations and quotation marks omitted). As the Supreme Court recently explained, AEDPA "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. ----, 134 S. Ct. 10, 15 (2013). AEDPA, therefore, "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.*

One of AEDPA's most significant limitations on the federal courts' authority to issue writs of habeas corpus is found in 28 U.S.C. § 2254(d). That provision forbids a federal court from granting

---

[4] The petitioner combines this last claim with his claim of ineffective assistance of counsel in "ground fourteen" of his petition. (ECF No. 1, at 16.)

habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis in original). As the Supreme Court has advised, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, (2007) (citing *Williams*, 529 U.S. at 410). The Supreme Court has held that review under § 2254(d)(1) " is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. ----, 131 S. Ct. 1388, 1398 (2011).

## V.      EXHAUSTION AND PROCEDURAL DEFAULT

In addition to § 2254(d)'s limitations, AEDPA generally precludes habeas review of claims that have not been properly exhausted before the state courts or were procedurally barred by the state courts, except in very limited circumstances.

### A.      Exhaustion

Section 2254(b)(1) provides that a federal court may not award habeas relief to an applicant in state custody "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State," "there is an absence of available State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). Exhaustion occurs once a petitioner has "give[n] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).[5] If under state law there remains a remedy that a petitioner has not

---

[5] In Tennessee, review by the state supreme court is not required for exhaustion. Instead, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. S. Ct. R. 39).

yet pursued, exhaustion has not occurred and the federal habeas court cannot entertain the merits of the claim. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

When a habeas court finds a claim to be unexhausted, it can, for good cause, stay the action and permit the petitioner to present his unexhausted claim to state court and then return to federal court for review of his perfected petition. *Rhines v. Weber*, 544 U.S. 269, 277 (2005). The court need not wait for exhaustion, however, if it determines that a return to state court would be futile. *See id.* ("[E]ven if a petitioner had good cause for that failure [to exhaust claims in state court], the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless."); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

**B.      Procedural Default**

Even where a state prisoner has exhausted available state-court remedies, a federal court may not consider "contentions of federal law which are not resolved on the merits in the state proceeding due to [the petitioner's] failure to raise them as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). If a "state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To be independent, the state court's decision must not "appear[] to rest primarily on federal law, or to be interwoven with the federal law." *Id.* at 735 (citation and quotation marks omitted). To be adequate, a state procedural rule generally must be "'firmly established and regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60 (2009). And finally, if a petitioner failed to fairly present a particular federal habeas claim to the state courts but has no remaining avenue available for doing so, then the claim is deemed to be exhausted but procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. at 848; *Rust*, 17 F.3d at 160.

A petitioner can establish cause in two ways. First, a petitioner may "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Objective impediments include an unavailable claim or

interference by officials that made compliance impracticable. *Id.* Second, constitutionally ineffective assistance of trial or appellate counsel may constitute cause. *Murray*, 477 U.S. at 488–89. Generally, however, if a petitioner asserts ineffective assistance of counsel as cause for a default, that ineffective-assistance claim must itself have been presented to the state courts as an independent claim before it may be used to establish cause. *Id.* If the ineffective-assistance claim is not presented to the state courts in the manner that state law requires, that claim is itself procedurally defaulted and can only be used as cause for the underlying defaulted claim if the petitioner demonstrates cause and prejudice with respect to the ineffective-assistance claim. *Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000).

Until recently, a prisoner could not demonstrate cause for default by claiming that he received ineffective assistance of counsel during state post-conviction proceedings. *See Coleman v. Thompson*, 501 U.S. 722, 752–53 (1992) (holding that attorney error is not cause to excuse a default). The holding in *Coleman* was based on the premise that an individual does not have a constitutional right to counsel in post-conviction proceedings, so the prisoner "must bear the risk of attorney error that results in a procedural default." *Id.* (internal quotations omitted).

Recent changes in the law, however, have enabled petitioners in Tennessee to establish "cause" to excuse the procedural default of a substantial claim of ineffective assistance by demonstrating the ineffective assistance of post-conviction counsel in failing to raise the claim in initial-review post-conviction proceedings. *See Martinez v. Ryan*, 566 U.S. ----, 132 S. Ct. 1309, 1315, 1320 (2012) (creating an exception to *Coleman* where state law prohibits ineffective-assistance claims on direct appeal); *Trevino v. Thaler*, 569 U.S. ----, 133 S. Ct. 1911, 1921 (2013) (extending *Martinez* to states with procedural frameworks that make meaningful opportunity to raise ineffective-assistance claim on direct appeal unlikely); *Sutton v. Carpenter*, 745 F.3d 787, 792 (6th Cir. 2014) (holding that *Martinez* and *Trevino* apply in Tennessee).

The Supreme Court's creation in *Martinez* of a narrow exception to the procedural-default bar stemmed from its recognition, "as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Martinez*, 132 S. Ct. at 1318. In other words, *Martinez* requires that the ineffective assistance of post-conviction counsel occur during the "initial-review collateral

proceeding," and that "the underlying ineffective-assistance-of-trial-counsel claim [be] a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *See id.* at 1318–19, 1320. Importantly, *Martinez* did not dispense with the "actual prejudice" prong of the standard for overcoming procedural default first articulated by the Supreme Court in *Coleman*, 501 U.S. at 750.

To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his *actual* and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (citations omitted).

Because the cause-and-prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the Supreme Court has also recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (citing *Murray*, 477 U.S. at 496).

With these principles in mind, the court will turn to the examination of the claims raised in Nejad's petition for habeas relief.

## VI.    DISCUSSION

The petitioner articulates fifteen separate claims for relief, only six of which were at least arguably exhausted in the state courts. The remaining claims are procedurally defaulted or fail to state a claim that is cognizable in a habeas corpus case.

### A.    Exhausted Claims

#### Claim 1: Sufficiency of the Evidence

The petitioner argues that the proof at trial was not "sufficient to lead any rational trier of fact to conclude [he] was guilty beyond a reasonable doubt." (ECF No. 1, at 3.) He raised this argument in his direct appeal, and it is therefore fully exhausted.

The Supreme Court articulated the controlling rule for resolving a claim of insufficient evidence in *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson*, the Court held that evidence, when viewed in the light most favorable to the prosecution, is sufficient if "*any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences from the facts are all matters that lie within the province of the trier of fact. *Id.* at 319; *Cavazos v. Smith*, 565 U.S. ----,132 S. Ct. 2, 6 (2011) (noting that, under *Jackson*, the reviewing court must presume that the factfinder resolved any conflicts of fact in favor of the state and must defer to that resolution).

This court, of course, does not apply the *Jackson* rule *de novo*. Rather, this court's task, on habeas review, is to consider whether the state appellate court's application of *Jackson* was reasonable. In other words, as the Sixth Circuit has recognized, "[t]he law . . . commands deference at two levels" when a sufficiency-of-the-evidence claim is made in the context of a § 2254 petition: "first, to the jury's verdict as contemplated by *Jackson*, and, second, to the state court's consideration of the jury's verdict as dictated by AEDPA." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007); *see also Cavazos*, 132 S. Ct. at 6 (noting that "the deference to state court decisions required by § 2254(d) [must be] applied to the state court's already deferential review" under *Jackson*). Hence, a petitioner "bears a heavy burden" when insufficiency of the evidence is claimed. *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

The Tennessee Court of Criminal Appeals rejected the petitioner's sufficiency-of-the evidence claim without citing to *Jackson v. Virginia*, and relying instead on state-court decisions that, for the most part, predated *Jackson*. The standard it applied was nonetheless functionally equivalent to that articulated in *Jackson*. The court stated:

> When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). . . . In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence, *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978), nor may this court substitute its own inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). The trier of fact, not this court, resolves questions concerning the credibility of the witnesses. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982) [citing *Jackson*]; *Grace*, 493 S.W.2d at 476.

*Nejad I*, 2010 WL 3562015, at *2.

The court then reviewed the evidence presented at the trial, specifically with regard to the petitioner's argument that the conviction for conspiracy to commit first-degree murder was supported only by the uncorroborated testimony of the defendants' accomplices:

> In order to sustain a conspiracy conviction, Tennessee Code Annotated section 39-12-103(a) requires the State to prove that: "two or more people, each having the culpable mental state required for the offense that is the object of the conspiracy, and each acting for the purpose of promoting or facilitating commission of an offense, agree that one or more of them will engage in conduct which constitutes such offense." To prove the existence of a conspiratorial relationship, the State may show that a "mutual implied understanding" existed between the parties. The conspiracy need not be proved by production of an official or formal agreement, in writing or otherwise. The conspiracy may be demonstrated by circumstantial evidence and the conduct of the participants while undertaking illegal activity. The very concept of a conspiracy connotes some harmonization of design, not equal participation in every individual component of every criminal offense. Additionally, the remaining pertinent portion of this statute provides that "[n]o person may be convicted of conspiracy to commit an offense, unless an overt act in pursuance of the conspiracy is alleged and proved to have been done by the person or by another with whom the person conspired." T.C.A. § 39-12-103(d).

> An accomplice is a person who "knowingly, voluntarily, and with common intent with the principal offers to unite in the commission of a crime." Convictions may not be based solely upon the uncorroborated testimony of accomplices. However, Tennessee law requires only a modicum of evidence in order to sufficiently corroborate such testimony. More specifically, precedent provides that:

> > The rule of corroboration as applied and used in this State is that there must be some evidence independent of the testimony of the accomplice. The corroborating evidence must connect, or tend to connect the defendant with the commission of the crime charged; and furthermore, the tendency of the corroborative evidence to connect the defendant must be independent of any testimony of the accomplice. The corroborative evidence must of its own force, independently of the accomplice's testimony, tend to connect the defendant with the commission of the crime.

> *State v. Griffis*, 964 S.W.2d 577, 588–89 (Tenn. Crim. App. 1997) . . . . Furthermore, the question of whether an accomplice's testimony has been sufficiently corroborated is for the jury to determine.

> When viewed in the light most favorable to the State, . . . [s]ufficient evidence was . . . provided to support both defendants' convictions for conspiracy to commit first degree murder. The State demonstrated that the defendants had a motive to kill their intended victims because Defendant Aso had been robbed of $1500, in a drug deal gone bad with the intended victims. Defendant Ako told Salih that the defendants intended to retaliate against the men who robbed Defendant Aso. The record also reflects that Defendant Ako recruited others to participate in the retaliation and that he directed the activities of those assembled. He orchestrated a series of telephone calls to the intended victims to set up an alleged drug deal. He gave Delosh Ahmed a phone number and directed Ahmed to arrange for the deal at Edwin Warner Park. Defendant Ako also made clear to the participants that a drug deal was not going to take place. The defendants supplied the participants with weapons from a duffel bag that contained several handguns and a rifle.

> The conspirators gathered at the park, and Defendant Ako laid out a plan to "take

out" the intended victims. Defendant Ako said he was going to "take out the driver" and directed Salih to "take out" the passenger. Others were the lookout for the group and were set to inform the defendants when the intended victims arrived at the park. The participants were dressed in black and put on gloves provided by Defendant Aso. They hid behind trees in the park while Salih sat in Defendant Ako's car, waiting for the intended victims. The officer interrupted the conspiracy when he encountered Defendant Ako's car. Defendant Ako then fired shots upon the officer's patrol vehicle while he pursued Salih.

Independent evidence, in the form of cellular telephone records, was presented indicating that the conspirators were at the park. The defendant's vehicles were also found in the park on the night of the shooting. One of the intended victims told police that he was near the area of the shooting on that night. The intended victim also told police that he had participated in a robbery of Defendant Aso before the night of the shooting. The State also offered testimony that the police recovered a duffle bag of weapons from Defendant Ako's automobile, a loaded rifle next to a tree at the crime scene, and a loaded handgun at the park.

Here, the defendant's convictions were not based solely on the uncorroborated testimony of an accomplice. The evidence connected the defendants with the commission of the crime independently of the accomplices' testimony. Therefore, the defendants are not entitled to relief on this issue.

*Id.* at *3–5 (most internal citations omitted).

The legal standard applied by the Tennessee Court of Criminal Appeals was in accord with the federal standard that was clearly established by *Jackson*, and the state court's conclusion that there was sufficient evidence to support the petitioner's conviction was not unreasonable in light of the evidence before that court. The petitioner is not entitled to relief on the basis of this claim.

### Claim 2: Maximum Sentence

The petitioner asserts that the trial court erred in sentencing the petitioner to the maximum sentence. Although he asserts that his sentence violated his rights under the 4th, 8th and 14th Amendments to the United States Constitution (*see* ECF No. 2, at 4), his argument in support of this claim is based solely on his contention that the trial court erred in its application of state-law enhancing factors at sentencing. (*See* ECF No. 2, at 3.) This claim was raised on direct appeal as well; there, too, the petitioner relied only on state law, and the state court resolved the claim solely with reference to state law, specifically Tenn. Code Ann. §§ 40-35-101(d), 40-35-210(c), and 40-35-112(a)(1), and the case of *State v. Carter*, 254 S.W.3d 335 (Tenn. 2008).

In *Carter*, the Tennessee Supreme Court noted that the Tennessee sentencing statute had been amended in order to bring state law into compliance with *Blakely v. Washington*, 542 U.S. 296 (2004), in which the Supreme Court held that any sentence imposed in excess of that authorized by the jury's

verdict alone violated the Sixth Amendment. *See Blakely*, 542 U.S. at 303–04 ("[T]he 'statutory maximum' . . . is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority." (internal quotation marks and citations omitted)); *Carter*, 254 S.W.3d at 342–43 ("Our legislature amended the Sentencing Act in 2005 after the United States Supreme Court issued its opinion in *Blakely v. Washington* . . . . In *Blakely*, the high court decided that '[i]f the jury's verdict alone does not authorize the sentence . . . , the Sixth Amendment requirement is not satisfied.").

In Aso Nejad's appeal, the Tennessee Court of Criminal Appeals determined that the trial judge had imposed a sentence within the range permitted by the statute and that, as such, it was consistent with *Carter* and, implicitly, with *Blakely*. *Nejad I*, 2010 WL 3562015, at *9. The petitioner has not presented any evidence that his sentence exceeded the statutory maximum for his crime. He admits that he was convicted of a Class A felony and sentenced as a Range I offender. Under Tennessee law, the sentencing range for a Range I, Class A felony is fifteen to twenty-five years. Tenn. Code Ann. § 40-35-112(a)(1). Absent evidence that his sentence exceeded the statutory maximum for his crime, a petitioner's challenge to the length of his sentence is typically not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) ("[F]or crimes concededly classified and classifiable as felonies, . . . the length of the sentence actually imposed is purely a matter of legislative prerogative." (citation omitted)); *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000) ("As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" (*quoting Williams v. New York*, 337. U.S. 241, 245 (1949))).

It is questionable whether the petitioner raised this claim as a federal constitutional claim in the state courts. Even assuming it was exhausted as a federal claim, the petitioner has failed to show that his sentence violated federal law. He is not entitled to relief on the basis of this claim.

### Claim 3: Failure to Declare a Mistrial

The petitioner argues that the trial court erred in failing to declare a mistrial after Sergeant Jason Beddoe testified that the petitioner's brother was a gangmember, and that "[t]his improper character evidence prejudiced the petitioner by inference and led to an improper sentence." (ECF No. 1, at 4.) He acknowledges that the trial court issued a curative instruction, but insists that the "brief curative instruction was not adequate to remove the prejudice that the officer's comment placed on petitioner." (ECF No. 2, at 4.) This issue was raised on direct appeal, but only as a claim that the trial court failed to comply with Rule 404(b) of the Tennessee Rules of Evidence.

In other words, although the claim was exhausted in the state courts, it was not presented in that context—and is not presented here—as a federal constitutional claim. The state trial court concluded as a factual matter that the police officer did not actually say that the defendant's brother was a gangmember and therefore that the defendants failed to demonstrate that they were prejudiced by the statement at issue. The appellate court affirmed on the basis that the defendants failed to establish that the trial court had abused its discretion, because they did not establish prejudice as a result of the evidentiary ruling. *Nejad I*, 2010 WL 3562015, at *6.

"Errors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Franklin v. Bradshaw*, 695 F.3d 439, 456 (6th Cir. 2012) (quoting *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994)). The petitioner here has not shown that the alleged error was so egregious that he was denied the right to a fair trial. This is particularly so because the record establishes that the police officer did not state that the petitioner's brother was a gangmember. As the state court recognized, the officer simply stated that "[o]ne of the guys that was working for [him] at the time" was "work[ing] in the gang unit now." (Trial Tr. Vol. III at 194:7–9, ECF No. 33-4, at 19.) The trial court immediately interceded to instruct the jury: "Ladies and gentlemen, you are to disregard that last comment totally. You are to consider it as if you had never known it." (*Id.* at 194:12–14.)

This claim is not cognizable on habeas review, and the petitioner is not entitled to relief.

### Claim 4: Insufficiency of the Indictment

The petitioner contends that "the indictment was insufficient . . . for not alleging an overt act in

furtherance of the conspiracy to commit, first degree murder." (ECF No. 1, at 5.) Specifically, the

petitioner claims that the indictment "does not give any details of the alleged conspiracy, and states only

general information, and does not include the full name of the second alleged victim of the conspiracy.

This defective indictment voids all subsequent proceedings in the petitioner's case." (*Id.*)

Count 1 of petitioner's indictment reads as follows:

THE GRAND JURORS of Davidson County Tennessee, duly impaneled and sworn, upon their oath, present that:

**ASO HASSAN NEJAD a.k.a. DIAKO NEJAD,
AKO HASSAN NEJAD, NECHIRVAN KAHA YAHYA,
DELOSH HASSAN AMED and CEDRIC WILLIAM WICKS**

on the **4th** day of **August, 2006**, in Davidson County, Tennessee and before the finding of this indictment, did **knowingly** agree with another that one or more of them would engage in conduct that constitutes the offense of **First Degree Murder**, with each having the culpable mental state required for the commission of that offense, and with each acting for the purpose of promoting or facilitating the commission of the offense, and in furtherance of the conspiracy did engage in one or more of the following overt acts:

- **did participate in a purported drug transaction with Darion Coleman and Germaine in order to entice Darion Coleman and Germaine to Edwin Warner Park for the purpose of killing the said Darion Coleman and Germaine.**

Wherefore, **Aso Hassan Nejad a.k.a. Diako Nejad, Ako Hassan Nejad, Nechirvan Kaha Yahya, Delosh Hassan Ahmed and Cedric William Wicks** did conspire to violate Tennessee Code Annotated §**39-13-202**, in violation of Tennessee Code Annotated §39-12-103, and against the peace and dignity of the State of Tennessee.

(Indictment, ECF No. 33-1, at 5–6 (emphasis in original).)

The sufficiency of an indictment is measured by whether it "(1) contains the elements of the

charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant

against double jeopardy." *Valentine v. Konteh*, 395 F.3d 626, 631 (6th Cir. 2005) (citing *Russell v. United

States*, 369 U.S. 749, 763–64 (1962)). The state court, in ruling on this claim in the petitioner's appeal, did

not reference federal law, but its discussion of the applicable standard under state law was clearly

consistent with the federal standard:

As a general matter, an indictment "must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment. . . ." T.C.A. § 40-13-202. It is well-settled that an indictment must provide sufficient information: (1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy. When the indictment or presentment

fails to fully state the crime, all subsequent proceedings are void.

*Nejad I*, 2010 WL 3562015, at *5 (alteration in original; some internal citations and quotation marks omitted). Applying that standard, the court concluded that

> the indictment properly asserted all essential elements of the offense of conspiracy to commit first degree murder, including that the defendants committed an overt act by attempting to "entice" the intended victims to the park with a purported drug transaction for the purpose of killing them. The language of the indictment clearly alleged the required mental state for the conspiracy and conformed with the requirements of the statute in alleging that the defendants committed an overt act in pursuance of the conspiracy. The indictment asserted all the essential elements of the conspiracy offense.

*Id.* at *6. The petitioner cannot show that the resolution of this claim involved an unreasonable application of clearly established federal law or was based upon an unreasonable determination of the facts in light of the evidence before the state court. The petitioner is not entitled to habeas relief on the basis of this claim.

### Claim 9: Trial Counsel's Failure to Investigate and Present Material Witnesses

The petitioner asserts that his Sixth Amendment right to the effective assistance of counsel at trial was violated insofar as his trial attorney failed to "investigate material witnesses and evidence" prior to trial. (ECF No. 1, at 12.) He further asserts that he was prejudiced by counsel's failure to prepare adequately for the petitioner's defense. Although he does not elaborate on this claim in his petition or supporting memorandum filed in this court, the petitioner argued in his post-conviction appeal that his trial counsel was ineffective for failing to investigate and call two material witnesses, Nashwan Muhammed and Drau Kokoye. Kokoye did not testify at the post-conviction hearing,[6] but Muhammed testified that he would have been available to testify if called at trial. If called, he would have testified that the petitioner's brother asked him to help rob the group of men who had robbed the petitioner and that the petitioner's brother never mentioned killing the intended victims of the robbery. Muhammed, however, declined to participate in the scheme.

The petitioner argued in his post-conviction appeal that trial counsel was aware of the existence

---

[6] Drau Kokoye did testify at Aso Nejad's brother's post-conviction hearing. The post-conviction court denied the petitioner's motion to supplement the record in his case with Kokoye's testimony at Ako Nejad's post-conviction hearing. The petitioner filed a motion to consolidate the records on appeal, but the appellate court determined that "the post-conviction court was in the better position to determine whether to supplement the record in Petitioner's appeal with the testimony of Mr. Kokoye" and that "the evidence presented at the evidentiary hearing was insufficient to show prejudice to Petitioner because Mr. Kokoye did not testify." *Nejad II*, 2014 WL 1514592, at *4.

of Muhammed and Kokoye and knew that they could have testified that the defendants intended to commit a robbery rather than a murder. He also argued that the state's case "hinged on the testimony" of one co-conspirator, Bushra Salih, who testified that the plan was to murder the intended victims, not merely rob them. (Pet'r's Post-Conviction App. Br. 11, ECF No. 33-18, at 12.) Despite the fact that trial counsel also knew that the state intended to introduce into evidence the various firearms that were found at the crime scene, along with the petitioner's car, and that the state intended to introduce cell phone triangulation evidence placing the petitioner at the crime scene, the petitioner's trial attorney nonetheless stuck with a theory of arguing that there was not sufficient evidence to place the petitioner at the crime scene.[7] The petitioner essentially argued in the state courts that, in light of the overwhelming evidence that the petitioner was present at the scene, it was unreasonable for trial counsel not to present available rebuttal evidence to show that the intended crime was robbery rather than murder. As the petitioner stated: "From the State's perspective, Salih's testimony was critical in proving a conspiracy not just to commit a robbery, but also a murder. Therefore trial counsel's failure to call two available rebuttal witnesses who would have offered directly contradictory testimony rose above a mere tactical decision and amounted to ineffective assistance of counsel." (*Id.*)

The petitioner's trial attorney, Dumaka Shabazz, testified at the post-conviction hearing that he was retained by the petitioner's family approximately two weeks before the trial. He was aware that the petitioner wanted to offer as his defense that the event was a conspiracy to commit an aggravated robbery and not to commit a murder. Shabazz noted that "it was clear even at trial that these guys had been robbed, they were coming back to re-rob the guys that robbed them." (Post-Conviction Hr'g Tr., ECF No. 33-14, at 52:2–6.) Asked what his concerns were about the petitioner testifying at the trial that the intent was to rob rather than to murder the victims, Shabazz testified as follows:

> One of the concerns was that I felt that it was going to come out that Mr. Nejad was an active drug dealer, which already I believed in the jury's mind would be a prejudice against him, that he was willing without hesitation to commit a robbery, that he was willing without hesitation to commit a robbery with guns that could very and most likely end up in violence, that he knew that those guys had guns, he was going to show up with guns. And when two groups show up with guns, it's going to be bad. And that it was at least

---

[7] The court has reviewed the trial transcript of the testimony of Detective Charles Freeman, who introduced cell phone evidence. This evidence concerned mobile phones used by other defendants but did not actually implicate Aso Nejad. (*See* Trial Tr. Vol. III, at 199–250, ECF No. 33-4, at 24–75 (testimony of Det. Freeman).)

foreseeable the result would be somebody dying.

(*Id.* at 52:12–22.) Shabazz stated that he explained these concerns and his trial strategy to his client:

> My theory that I discussed with him is that we were in a better position than his brother because we were going to have two bites at the apple with the defense. One is that I believed I was going to be able to show that Bushra Salih was a complete liar, that he was just doing this to get a deal . . . and that we would be able to show – I would be able to argue that this was a robbery, but I also was going to have the opportunity to say nobody has even proved that he was there. And if he took the stand and testified that, yeah, I was there, I was a drug dealer, we were going to rob these guys, that would take away that defense. And I wanted to have something a little bit extra since we were in trial with the co-defendant, just a little extra defense to be able to argue in front of the jury. And that's exactly what we did. We argued that, one, this was only going to be a robbery, and two, that the government, you know, may not even have proved that [the petitioner] was there.

(*Id.* at 53:5–54:2.)

Regarding why he did not approach the witnesses the petitioner wanted him to call, Shabazz expressed his belief that these witnesses were not "essential," both because they were not actually present at Edwin Warner Park on the night in question and because other witnesses were going to testify that "we were going to rob somebody." (*Id.* at 56:17–19.) Specifically, not being present, Muhammed "couldn't give any idea about what happened that night, anything else that transpired that would have changed the objective." (*Id.* at 56:22–24.) Shabazz therefore chose not to approach Muhammed or seek to put him on the stand. Moreover, at least one co-conspirator, Deslosh Ahmed, testified at trial that his understanding of the plot was that they were going to rob the drug dealers who had previously robbed the petitioner and that he personally was "going to get some green out of it," that is, some illegal drugs. (Trial Tr. 113–14, ECF No. 33-2, at 116–17.) Both the petitioner's counsel and counsel for the petitioner's co-defendant argued strenuously during closing that the co-conspirator witnesses were not believable and had motive to lie to procure deals for themselves, that the state had not offered any evidence of a conspiracy to kill, that the evidence pointed instead to a robbery plot, and that the state prosecutor was the only person in court using the word "kill" in connection with the conspiracy. In reaching a guilty verdict, the jury evidently chose to credit Bushra Salih's testimony despite the challenges to his credibility.

The Supreme Court established the standard for proving ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). There, the Court held that in order to successfully claim that a lawyer's assistance was so ineffective as to violate the Sixth Amendment a defendant must meet two requirements: "First, the defendant must show that counsel's performance was deficient." *Id.* at 687.

"Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* As discussed above, however, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is *not* whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* (internal quotation marks and citation omitted).

In its consideration of this claim, the Tennessee Court of Criminal Appeals articulated the correct standard, with reference to *Strickland*, further noting that an attorney's decision based on a reasonable trial strategy does not amount to ineffective assistance, even if that decision appears unwise in retrospect: "[W]e cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of proceedings. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case." *Nejad II*, 2014 WL 1514592, at *4 (citations omitted).

Because Drau Kokoye did not testify, see Note 6, *supra*, the appellate court concluded that the petitioner failed to establish that counsel was deficient or that the petitioner was prejudiced by the absence of Kokoye's testimony. In light of the fact that Kokoye did not testify, the state court's decision in

that regard is not unreasonable.[8]

Regarding Muhammed's testimony, the state appellate court noted that the post-conviction court "accredited the testimony of trial counsel and concluded that Petitioner failed to show by clear and convincing evidence that trial counsel was ineffective for failing to call Mr. Muhammed or that Petitioner was prejudiced by the alleged deficiency." *Id.* at *5. The appellate court affirmed:

> The evidence does not preponderate against the court's findings. Mr. Muhammed testified at the post-conviction court that Petitioner's brother asked him to participate in a robbery, and Mr. Muhammed decided not to get involved. He testified that Petitioner's brother did not mention killing anyone. Trial counsel testified that he did not contact Mr. Muhammed prior to trial because he did not have anything to add to the trial other than to say that the incident was supposed to be a robbery, which was established by other witnesses. Trial counsel determined that Mr. Muhammed's testimony was not essential to Petitioner's defense. Petitioner has failed to establish that trial counsel's performance was deficient or that he was prejudiced by counsel's performance.

*Id.*

As indicated by the discussion above, the state court's factual findings are supported by the evidentiary record. Further, this court finds that the state court was not unreasonable in concluding, as a legal matter, that the petitioner's trial counsel's performance was not deficient. At the post-conviction hearing, defense counsel explained his strategy and why he chose not to call Muhammed, as proposed by his client. In particular, Shabazz noted that Muhammed was not a participant in the alleged conspiracy and could not testify about what transpired the night of the crime. This court observes that Muhammed, even if called to testify, would not have been able to rebut the testimony of Bushra Salih, who stated that when the group was already at the park, Ako Nejad handed out weapons and laid out the plan, stating that he would "take out the driver" and that Salih was supposed to "take out the passenger," while the petitioner and co-defendant Yahya were "supposed to take out whoever else came." (Trial Tr. Vol. I, at 27:19–23, ECF No. 33-2, at 30.) In addition, both the petitioner's counsel and Ako Nejad's attorney attempted to impeach Salih's believability, and both argued strenuously that the credible evidence pointed

---

[8] Kokoye testified in the petitioner's brother's post-conviction hearing that he would have been willing and available to testify at the trial, and that he would have testified that he was present during a conversation between Ako Nejad and the state's witness, Bushra Salih, the morning after the incident, that he heard Salih state in the petitioner's presence that Salih was in the park to recover the money stolen from Aso Nejad, and that he never said anything about a plan to kill anyone. *Ako Nejad v. State*, No. M2013-00223-CCA-R3-PC, 2013 WL 5628720, at *5 (Tenn. Ct. Crim. App. Oct. 14, 2013). There is no explanation in the record before this court as to why Kokoye did not testify at Aso Nejad's post-conviction proceedings.

to a robbery scheme rather than a murder scheme.

Although it is easy, in hindsight, to second-guess counsel's decision, to speculate that calling a witness who could testify unequivocally that he was invited to join a robbery conspiracy and not a murder conspiracy might have helped the petitioner's case and probably could not have hurt it, that is not the question presented here. The question is simply whether the Tennessee court was unreasonable in rejecting the petitioner's ineffective-assistance claim. With regard to that specific question, this court finds that the petitioner has failed to demonstrate that the Tennessee appellate court's rejection of this claim involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence before the state court. The petitioner is not entitled to relief on the basis of this claim.

However, because "jurists of reason could disagree" with this court's resolution of this claim, *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), the court will grant a certificate of appealability as to this claim.

### Claim 11: Trial Counsel's Failure to Advise the Petitioner of his Right to Testify

The petitioner asserts that his trial attorney was ineffective for failing to adequately inform him concerning his right to testify or to adequately prepare him to testify. He exhausted this claim in the state proceedings, and the Tennessee Court of Criminal Appeals rejected the claim, as follows:

> [T]he post-conviction court found that Petitioner's testimony at the post-conviction hearing of what Petitioner would have testified to had he testified at trial implicated him in a robbery. The court further found that Petitioner acknowledged waiving his right to testify at trial. The record supports the post-conviction court's findings. Petitioner testified that he planned to "get [his] money back by robbing [the intended victims]." Although Petitioner maintained that he did not intend to kill anyone, he acknowledged that weapons were found at the scene and were brought for the purpose of committing the robbery. Petitioner also acknowledged that he waived his right to testify and did not express his desire to testify to the trial court. Trial counsel testified that he advised Petitioner not to testify because he had concerns that Petitioner's testimony that he was an admitted drug dealer would prejudice the jury against Petitioner. Petitioner has failed to establish that counsel's performance was deficient or that Petitioner was prejudiced by the alleged deficiency.

*Nejad II*, 2014 WL 1514592, at *5.

As set forth above, the state court applied the correct standard of review. And again, the petitioner has failed to show that the state court's rejection of his claim involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts

in light of the evidence before the state court. The petitioner is not entitled to relief on the basis of this claim.

**B.      Defaulted Claims**

In his *pro se* post-conviction petition in the state court, the petitioner raised all of the same ineffective-assistance claims he raises here, including claims 5 (that counsel was ineffective for failing to move to change venue); 6 (that counsel was ineffective at the jury-selection stage), 7 (that counsel was ineffective during opening statements), 8 (that counsel was ineffective for failing to object to specific testimony offered by the state's witnesses, incorporating 70 subparts); 10 (that counsel was ineffective for failing to preserve and raise appellate issues, incorporating 13 subparts); 12 (that counsel was ineffective in cross-examining witnesses or for failing to conduct any cross-examination, incorporating 10 subparts); and 13 (that counsel was ineffective during the sentencing phase). The petitioner raises an additional catch-all claim of ineffective assistance of appellate counsel (claim 14) that was not presented in the post-conviction proceedings, and a free-standing claim of ineffective assistance of post-conviction counsel based on post-conviction counsel's failure to "properly and accurately seek review and determination of 'EVERY' ground as presented in the original petition submitted to the trial court." (ECF No. 1, at 16.)

*a.      Claims Raised in Initial-Review Post-Conviction Proceedings*

Claims 5, 6, 7, 8, 10, 12 and 13 were raised in the initial *pro se* post-conviction petition. Appointed counsel did not present evidence to support them at the post-conviction hearing, as a result of which the post-conviction court deemed them waived. (*See* Post-Conviction Order, ECF No. 33-13, at 63, 65–71.) They also were not addressed in the post-conviction appeal. (*See* Post-Conviction App. Br., ECF No. 33-18.) In other words, the petitioner did not fully and fairly present these claims to the highest available state court in Tennessee. State procedural rules, specifically the one-petition rule, Tenn. Code Ann. § 40-30-102(c), and the one-year statute of limitations, Tenn. Code Ann. § 40-30-102(a), bar the petitioner from asserting or reasserting the claims in the state courts now. As a result, the claims are deemed to be exhausted (because no avenue for raising the claims in state appellate court remains) but procedurally defaulted for the purposes of federal habeas review.

As set forth above, in order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both "cause" for the procedural default and actual prejudice resulting from

the alleged constitutional errors. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). In this case, the petitioner does not assert cause for the procedural default. In fact, he does not acknowledge that the claims are procedurally defaulted. He states unequivocally that "[a]ll grounds herein submitted . . . have been presented and exhausted at the state court level." (ECF No. 1, at 16.) Nonetheless, based on his assertion of ineffective assistance of post-conviction counsel, the court broadly construes the petition as asserting that the ineffective assistance of post-conviction counsel serves as cause for the default of the claims that were not pursued in the post-conviction hearing or in the post-conviction appeal.

Until recently, a prisoner could not demonstrate cause by claiming that he had received ineffective assistance of counsel during state post-conviction proceedings. As discussed above, however, recent changes in the legal landscape have enabled petitioners in Tennessee to establish "cause" to excuse the procedural default of a substantial claim of ineffective assistance by demonstrating the ineffective assistance of post-conviction counsel in failing to raise the claim in initial-review post-conviction proceedings. *See Martinez*, 132 S. Ct. at 1315, 1320 (creating exception to *Coleman* where state law prohibits ineffective-assistance claims on direct appeal).

The *Martinez* exception, however, is quite narrow. It requires that the ineffective assistance of post-conviction counsel occur during the "initial-review collateral proceeding" and therefore does not "concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings." *Martinez*, 132 S. Ct. at 1320. Thus, *Martinez* does not provide cause to excuse the default of claims that were litigated in the initial review post-conviction proceedings but not raised on appeal. Insofar as the petitioner seeks to posit that the ineffectiveness of post-conviction counsel constitutes cause for the default of claims that were not raised during the post-conviction *appeal*, *Martinez* does not provide an avenue for relief. Such defaulted claims are not reviewable in this court and are instead subject to dismissal.

It remains, however, an open question in the Sixth Circuit whether *Martinez* might apply to excuse a default that occurs at initial-review post-conviction proceedings as a result of post-conviction counsel's failure to provide evidentiary support for a claim (whether raised in an initial petition filed by the petitioner or in an amended petition filed by counsel) during the post-conviction evidentiary hearing. Regardless, under *Martinez*, the petitioner must establish that the underlying ineffective-assistance claims are

substantial and that he suffered actual prejudice as a result of the failure to pursue the claim.

In this case, the petitioner cannot establish that the defaulted claims are substantial or that he was prejudiced by post-conviction counsel's failure to support them at the hearing. The post-conviction trial court actually addressed each of the claims that were raised in the petition but not addressed at the hearing (except for claim 7, ineffectiveness during opening statements) and, while noting that the claims were waived, the court also found with respect to most of the claims that the petitioner was not prejudiced by the alleged deficiency on the part of trial counsel.[9] This court too has examined all of these claims (including claim 7). In his petition in this court, the petitioner has not offered any cogent evidence or argument supporting his claims that his trial counsel's performance was deficient or that the petitioner was prejudiced by any purported errors by his trial attorney. He therefore also cannot show that he was prejudiced by post-conviction counsel's waiver of these claims. The claims are not substantial. Because they are procedurally defaulted, and the petitioner cannot overcome the default, they are barred from review in this court and subject to dismissal on that basis.

### b. Claims 14 and 15

Regarding the petitioner's free-standing claim that he was denied the effective assistance of counsel on his direct appeal, that claim is clearly defaulted, and the ineffective assistance of post-conviction counsel does not provide cause to overcome the default of this claim. *See Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) ("Under *Martinez*'s unambiguous holding . . . ineffective assistance of

---

[9] Specifically, the court noted with respect to counsel's alleged ineffectiveness for failing to move to change the venue (claim 5), that this issue had been addressed in the petitioner's brother's post-conviction hearing and that the court found no basis for changing venue. Moreover, none of the potential jurors indicated that they had been exposed to media reports about the case or had any prior knowledge of it. Likewise, the petitioner's brother had also argued in his post-conviction proceeding that counsel was ineffective at jury selection (claim 6) and that he, like the petitioner here, "made a blanket blame and did not indicate any specific juror as being biased." (ECF No. 33-13, at 66.) In addition, counsel for the petitioner's brother testified that he and petitioner's counsel had consulted with each other, as both were concerned that potential prejudice might be an issue during jury selection, and this was an issue on which they focused during voir dire. The record reflected that petitioner's counsel challenged four jurors, the state challenged four, and the court struck five jurors for cause. The court implicitly found that the petitioner could not show that his attorney was deficient or that the petitioner was prejudiced. The court noted that the petitioner's claims that counsel was ineffective in myriad ways for failing to object to testimony or preserve issues on appeal (claims 8 and 10) were waived, but stated that she had "reviewed the list of challenges set forth in the *pro se* petition and [found] that none of the incidents listed by Petitioner constitute[d] ineffective assistance of counsel nor has Petitioner demonstrated that he suffered any prejudice by the alleged deficiency. (ECF No. 33-13, at 66.) The court further found that the petitioner failed to establish that his counsel was ineffective in his cross-examination of the state's witnesses or at sentencing.

post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel."). Claim 14 must be dismissed on that basis.

Finally, in claim 15, the petitioner asserts a free-standing claim based on the denial of the effective assistance of post-conviction counsel. *Martinez* did not overrule the well established principle that there is no constitutional right to post-conviction counsel or, consequently, to effective post-conviction counsel. This claim is subject to dismissal on the basis that it is not cognizable in a habeas corpus proceeding. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings."); *Wallace v. Sexton*, --- F.3d ----, 2014 WL 2782009, at *11 (6th Cir. June 20, 2014) (same, citing *Martinez*, 132 S. Ct. at 1315). Because the petitioner's claim does not present a cognizable basis for federal habeas review, relief is precluded by 28 U.S.C. § 2254(a).

## VII. CONCLUSION

For the reasons set forth herein, Aso Nejad's petition under § 2254 will be denied and this matter dismissed with prejudice.

Federal Rule of Appellate Procedure 22 provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a final order. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).

As indicated above, the court will grant a certificate of appealability as to Claim 9. Because jurists of reason would not disagree with the resolution of the remaining claims, the court will deny a COA as to any other claims.

An appropriate order is filed herewith.

Aleta A. Trauger
United States District Judge